UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Richard J. Laws,

        Petitioner,

v.                                                         Civil Action No. 5:10-CV-306

State of Vermont,

        Respondent.

### REPORT AND RECOMMENDATION
(Docs. 1, 6 and 11)

      Petitioner Richard Laws has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In 1993, Laws received a state court sentence of twenty to thirty-five years for kidnapping, raping and severely beating a woman in central Vermont.  He now claims that he was denied due process in his subsequent state court Post-Conviction Review ("PCR") proceedings.  Respondent has filed two motions to dismiss, the first arguing that the petition is untimely, and the second that Laws' due process claim is not cognizable under § 2254.  For the reasons set forth below, I recommend that the petition be DENIED, and that this case be DISMISSED.

### Factual and Procedural Background

      The Vermont Supreme Court summarized the facts underlying Laws' criminal convictions as follows:

> The crimes occurred in the late evening of June 19, 1992. While driving from Mad Mountain Tavern in Waitsfield that evening, the victim's tires went flat; the evidence suggested that defendant himself had punctured her tires. Defendant pulled up to her stopped vehicle and offered her a ride, which the victim accepted. Rather than bring her home, however, defendant drove the victim to the Granville Gulf area where he raped her. After raping her, defendant drove the victim to a more remote location and beat her severely with a blunt instrument. The victim left behind a large deposit of blood with head hair that the police later discovered during their investigation. The victim's injuries were life threatening and included a fractured skull.

*In re Laws*, No. 2004-118, slip op. at 1 (Vt. Sept. 29, 2004) ("*Laws I*") (Doc. 6-6 at 50.).

In February 1993, Laws pled guilty to charges of kidnapping, aggravated assault, and aggravated sexual assault. Consistent with the terms of the plea agreement, he received an aggregate sentence of twenty-five to thirty years in prison. *See In re Laws*, No. 2008-245, 2010 WL 711876, at *1 (Vt. Feb. Term 2010) ("*Laws III*"). He did not file a direct appeal.

In July 2000, Laws filed a state PCR petition, asserting that his convictions for both kidnapping and aggravated sexual assault subjected him to double jeopardy. The Washington County Superior Court granted the State's motion for summary judgment, holding that Laws had waived any double jeopardy claim when he pled guilty. The Vermont Supreme Court, relying on *United States v. Broce*, 488 U.S. 563 (1989), affirmed the lower court's ruling. *Laws I*, slip op. at 2 (Doc. 6-6 at 50-51.)

In November 2004, Laws filed a second PCR petition, arguing that his plea agreement violated double jeopardy; that the Washington County District Court lacked jurisdiction to accept the plea agreement; that the Washington County State's Attorney lacked the authority to sign the plea agreement; that his plea colloquy did not satisfy the

requirements of Vt. R. Crim. P. 11(f); and that trial counsel was ineffective. (Doc. 6-6 at 56-69.) The State moved for summary judgment, arguing that the petition should be denied on the merits, and that it was barred under 13 V.S.A. § 7134 as second or successive. The superior court granted the State's motion, concluding in part that the petition was barred as second or successive. *See In re Laws*, 928 A.2d 1210, 1214 (Vt. 2007) ("*Laws II*").

On appeal, the Vermont Supreme Court discussed the standards a superior court should apply when considering a second or successive petition. The court first determined that "it is clear that § 7134 bars relitigation of claims actually raised and decided on the merits in an earlier PCR." *Id.* at 1215. As to previously-unraised claims, however, the court noted that the standard was "less clear." *Id.* In clarifying this latter standard, the court stated that "the government has the burden of pleading abuse of the writ . . . . [T]he burden then shifts to the petitioner to show cause [for his failure to raise all issues in the initial petition] and actual prejudice." *Id.* at 1219. The court further held that if the PCR petition is to be dismissed for abuse of the writ, "the superior court must make findings on the issue of cause and prejudice." *Id.* Because the lower court record "was not developed in light of this standard," the Vermont Supreme Court reversed the dismissal of Laws' PCR petition and remanded the case back to the Superior Court. *Id.*

On remand, the Superior Court granted the State's motion to dismiss for abuse of the writ.

> With respect to petitioner's arguments, the [Superior Court] first found that petitioner's double jeopardy claim was premised on the same ground as the double jeopardy claim in his first PCR, and it thus dismissed this claim

3

>under 13 V.S.A. § 7134. As to the remaining claims, the court found that petitioner failed to show cause and actual prejudice. The court explained that petitioner made no argument in his brief that identified any cause for his failure to raise his claims concerning the district court's jurisdiction, the authority of the State's Attorney, or ineffective assistance of counsel. Instead, petitioner focused solely on alleged "official interference" by the Washington District Court, the Supreme Court, and Justice Johnson, with respect to a videotaped transcript of his change of plea hearing. The court found that the videotape had no bearing whatsoever on the three claims mentioned above. It thus concluded that petitioner failed to carry his burden to show cause and dismissed these claims.

*Laws III*, 2010 WL 711876, at *2.

As to his Rule 11 claim, Laws argued on remand that he was the victim of "official interference" because the state court docket had indicated that his plea colloquy was "off the record," and that no videotape transcript of the hearing existed. *Id.* at *3. The Superior Court noted, however, that the transcript issue had been raised "more than a year before the superior court rendered judgment against petitioner in his first PCR proceeding," that Laws or his attorney could have requested the videotape during that time, and that "petitioner acknowledged the existence of the videotape" in his appeal. *Id.* "The court also noted that petitioner could have raised his Rule 11 colloquy claim without the videotape . . . ." *Id.*[1]

Furthermore, after Laws moved for reconsideration, the Superior Court reviewed the plea transcript, and found that "it provided overwhelming evidence of petitioner's admissions and support for the factual basis for each of his three convictions." *Laws III*,

---

[1] Laws states in his petition that in mid-2004, Assistant Attorney General David Tarttar "managed to . . . discover the existence of the transcript of Petitioner's change of plea hearing." (Doc. 1 at 16.)

2010 WL 711876, at *3. In February 2010, the Vermont Supreme Court affirmed the denial of Laws' second state court PCR petition. *Id.*

Laws filed his § 2254 petition here on December 13, 2010. He first argues that his inability to access the videotape transcript of his change of plea hearing, combined with inadequate legal resources in state prison facilities in the 1990s, amounted to ineffective state corrective processes under 28 U.S.C. § 2254(b)(1)(B)(ii). His second argument is that by applying "for the first time" the cause and prejudice standard for second or successive state PCR petitions, the Vermont Supreme Court denied him his right to due process.

Respondent has filed two motions to dismiss. The first argues that under 28 U.S.C. § 2244(d)(2), Laws' statute of limitations for filing a petition expired in 1997. (Doc. 6.) Laws has responded to this first motion to dismiss, arguing that his claims did not become ripe until the Vermont Supreme Court issued its final ruling in 2010. (Doc. 14.) Respondent subsequently filed the second motion to dismiss, arguing that while § 2254 offers relief in the form of release from prison, re-sentencing, or a vacated conviction, Laws is instead seeking a remand for additional PCR proceedings. Thus, Respondent argues, the relief he seeks is outside the scope of § 2254. Respondent also contends that federal law does not require a state to grant post-conviction review, and that allegations of errors in a PCR proceeding are not cognizable under § 2254. (Doc. 11.)

In his response to the second motion to dismiss, Laws submits that Respondent's case law focuses on procedural violations of due process, and that the claims he is raising

5

are substantive in nature. Laws also argues, with respect to the statute of limitations issue, that he is entitled to equitable tolling. (Doc. 13.)

## **Legal Analysis and Conclusions**

I.  **Statute of Limitations**

The one-year statute of limitations for § 2254 petitions is set forth in the Anti-Terrorism and Effective Death Penalty Act (the "AEDPA"), 28 U.S.C. § 2244(d)(1). The AEDPA's limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Laws was sentenced in April 1993, and his time for filing a direct appeal to the Vermont Supreme Court expired 30 days later. *See* V.R.A.P. 4(a). The AEDPA, however, was not implemented until April 24, 1996. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998). For convictions that became final prior to the AEDPA's enactment, the Second Circuit has determined the limitations period expired one year after the statute's enactment, *i.e.* April 24, 1997. *See, e.g., Adeline v. Stinson*, 206 F.3d 249, 251 (2d Cir.

2000). Accordingly, without any sort of tolling of the statute, and setting aside the question of ripeness, Laws' § 2254 petition is untimely.[2]

The federal habeas corpus statute does have a provision that stops the limitations clock while a prisoner brings "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ." 28 U.S.C. § 2244(d)(2). That provision does not apply in this case, however, since Laws did not file his first state PCR petition until July 2000, nearly three years after the AEDPA limitations period had expired. *See Doe v. Menefee*, 391 F.3d 147, 154 (2d Cir. 2004).

Laws asks the court to apply equitable tolling, arguing that his legal materials were seized by prison personnel, and that the prison law libraries were inadequate. The United States Supreme Court recently determined that the AEDPA's statutory limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). Such tolling may apply only if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "A petitioner seeking equitable tolling must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the

---

[2] Laws argues, in part, that the limitations period set forth in § 2244(d)(1) does not apply here since he "has also sought review . . . under the general habeas corpus statute, 28 U.S.C. § 2241." In general, however, a challenge to a state court conviction must be brought pursuant to § 2254. *See McMillan v. R. Wiley, FCI*, 2002 WL 31545820, at *1 (E.D.N.Y. Sept. 26, 2002); *cf. Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

7

extraordinary circumstances.'" *Jenkins v. Greene*, 630 F.3d 298, 303 (2d Cir. 2010) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

In addition to equitable tolling, Laws notes that under § 2244(d)(1)(B), the one-year limitations period may commence once an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]" 28 U.S.C. § 2244(d)(1)(B). He argues that he faced just such an "impediment" in this case.

Specifically, Laws alleges that when he first became aware of a potential double jeopardy claim, he "sought to obtain his legal files and the transcripts of the change of plea hearing from Vermont Prisoners' Rights." (Doc. 1 at 8.) Laws does not state when these events – either the awareness of a potential claim or the initial effort to obtain relevant documents – occurred. After the materials were delivered to him by an investigator from Prisoners' Rights, they were allegedly confiscated as contraband. Laws claims that he was forced to file a civil action in state court, and that he "did eventually manage to obtain most of his legal materials[.]" (*Id.* at 9.) The videotape, however, "was damaged, and barely comprehensible, apparently the result of having been subjected to some form of magnetization." (*Id.* at 10.) Again, Laws does not set forth the dates on which he received either his legal materials or the videotape.

Laws also argues that the prison legal resources were inadequate. Litigation with respect to those resources reportedly resulted in a settlement agreement, which was accepted by this Court on June 3, 1997. *See Carriger v. Patrissi*, No. 1:89-cv-359; (Doc. 1 at 15) (citing *Halpin v. Patrissi*, which was consolidated with *Carriger*)). Laws now

8

submits that even after the settlement, it took "still many more months before those resources were adequate enough to permit Petitioner to investigate the legality of his convictions." (Doc. 1 at 10.) Laws ultimately filed his first PCR petition without a transcript of his change of plea hearing. (*Id.* at 11.)

As noted above, Laws must show that he could not have commenced a state court PCR proceeding but for the alleged "extraordinary circumstances." *Jenkins*, 630 F.3d at 303; *see Valverde*, 224 F.3d at 134. He must also show that he pursued his rights diligently. *See Pace*, 544 U.S. at 418. With regard to the availability of adequate legal resources, Laws' briefing is vague as to a timeline. The Court knows from its own records that the settlement he references in *Halpin* was reached in 1997. Although Laws now claims that it took "many months" after the settlement for the legal resources in Vermont prisons to be adequate, he does not explain why it took him over three years from the settlement date to file his first PCR petition.

Of the legal files that were allegedly confiscated by prison officials, the only item that Laws links directly to his PCR proceeding is the change of plea videotape and/or transcript. In order to show the required causal connection between the confiscation and his delayed filing, Laws must show that he could not have filed his PCR petition without a recording of the change of plea proceeding. He cannot make such an argument, however, since he ultimately filed his first PCR petition without having obtained the transcript. Moreover, as the Respondent properly argues, several courts have held that a petitioner's limitations period should not be extended merely because he has been unable to access a relevant transcript or other documentation. *See, e.g., Gassier v. Bruton*, 255

9

F.3d 492, 494-95 (8th Cir. 2001) ("Possession of a transcript . . . is not a condition precedent to the filing of [a habeas petition]."); *Williams v. Ercole*, 2010 WL 3785521, at *5 (S.D.N.Y. Sept. 10, 2010) ("A claim of extraordinary circumstances will not succeed if prisoners who claim that a lack of access to documents has prevented them from filing fail to show that the documents are needed."); *Anderson v. O'Gara*, 2002 WL 1633917, at * 5 (S.D.N.Y. July 23, 2002) (denying equitable tolling where the petitioner had not shown that his inability to obtain transcripts prevented him from filing his petition); *Fadayiro v. United States*, 30 F. Supp. 2d 772, 779 (D.N.J. 1998) (inability to obtain transcripts and other records needed for habeas petition did not rise to the level of "extraordinary circumstances" so as to justify equitable tolling). The Court should therefore find that, under either the principle of equitable tolling or the limitations provision regarding "impediments" in 28 U.S.C. § 2244(d)(1)(B), Laws' failure to file a timely petition should not be excused.

Laws also argues that his claim did not become ripe until the Vermont Supreme Court ultimately denied his second PCR appeal. This argument is best considered in the context of Respondent's second motion to dismiss. In that motion, discussed more fully below, Respondent argues that Laws' filing is not cognizable under § 2254. If, for the sake of argument, Laws' filing *is* cognizable under § 2254, then its filing within one year of the Vermont Supreme Court's latest decision was arguably timely. If, however, Respondent is correct that a § 2254 petition may only challenge the fact or length of custody, the Court should find that the instant petition, filed thirteen years after the expiration of the limitations period under the AEDPA, was not timely filed.

## II. Due Process Challenges

Laws brings two due process challenges with regard to the state court PCR proceedings. The first submits that the DOC's retention of his legal files, as well as the state court's allegedly-inadequate process for cataloging and retrieving videotapes, rendered "the State process ineffective to protect Petitioner's Right of Due Process under the Fourteenth Amendment to the United States Constitution." (Doc. 1 at 19.) Laws also contends, as part of this first claim, that the state courts denied him due process when they failed to adequately "review the transcripts once they had been located, or provide Petitioner with meaningful assistance of counsel to assist in framing his arguments . . . ." (*Id.*) Laws' second argument is that the Vermont Supreme Court violated his due process rights when it clarified the standard of review for second or successive petitions.[3]

Section 2254 authorizes habeas corpus review "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Respondent argues that Laws' claims are not cognizable under § 2254, because rather than claiming detention in violation of the "Constitution or laws or treaties of the United States," *id.*, Laws "instead asserts that Petitioner was denied due process of law in seeking post-conviction relief [in] Vermont state courts." (Doc. 11 at 6.)

---

[3] Laws' petition also cites 28 U.S.C. § 2254(b)(1)(B)(ii), which provides an exception to the requirement that § 2254 petitioner exhaust their state court remedies before proceeding in federal court. *See Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). Because exhaustion is not an issue in this case, that portion of the statute has no application here.

11

The Constitution does not require states to grant post-conviction review. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("Whereas a direct criminal appeal has now become a fundamental part of the criminal justice system, state post-conviction relief is not a part of the criminal proceeding -- indeed, it is a civil proceeding that occurs only after the criminal proceeding has concluded."). Consequently, most federal courts "'have rejected due process claims arising out of the conduct of state post-conviction proceedings,' following the reasoning that federal habeas courts are authorized by § 2254 to review the constitutionality of a state criminal conviction, and not alleged infirmities in state post-conviction relief proceedings." *Roman v. Napoli*, 2010 WL 4922627, at *12 (W.D.N.Y. Dec. 2, 2010) (quoting *Cruz v. Smith*, 2010 WL 582348, at *29 (S.D.N.Y. Feb. 17, 2010)); *see also Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (rejecting due process claim arising from post-conviction proceeding "because the constitutional error [petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, [and thus] it states no cognizable federal habeas claim"); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.").

The Second Circuit recently joined the "majority of our sister Circuits" in holding that "errors in state post-conviction proceedings do not provide a basis for redress under §

2254." *Word v. Lord*, No. 11-111-op, slip op. at 7-9 (2d Cir. May 13, 2011). Laws contends that this general principle only holds true for procedural errors, and that his claims are substantive in nature. In *Word* however, the Second Circuit cited with approval the Eighth Circuit's decision in *Bell-Bey v. Roper*, 499 F.3d 752 (8th Cir. 2007), which involved a substantive claim. (*Id.* at 8, 9). Specifically, the petitioner in *Bell-Bey* claimed that "the Missouri Court of Appeals . . . erred by applying the wrong harmless error standard regarding the admission of hearsay evidence." 499 F.3d at 756. The Eight Circuit declined to review the claim, holding that it was not cognizable under § 2254. *Id.* (citing *Finley*, 481 U.S. at 557, and *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990)). Other courts have similarly dismissed claims of substantive error in state court post-conviction review proceedings. *See, e.g., Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) (federal court may not review state courts' determination regarding evidence that was allegedly "switched" during post-conviction review proceeding); *Cruz*, 2010 WL 582348, at *28 (declining to review argument that post-conviction claim of newly discovered evidence was erroneously denied). Laws' effort to distinguish procedural errors from those of a more substantive nature is, therefore, without merit.

In reply to Respondent's second motion to dismiss, Laws relies heavily upon the Supreme Court's ruling in *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). (Doc. 13 at 2-3). In *Preiser*, however, the Court reviewed an alleged deprivation of good time credits, and did not consider the due process issues presented here. 411 U.S. 475, 498-99 (1973) (holding that habeas petition is appropriate solely for challenging the "fact or

duration of confinement"). The holding in *Preiser* thus has little relevance to the fundamental question presented here.

In sum, and in keeping with the substantial authority cited above, I find that Laws' due process objections regarding his state court post-conviction review proceedings are not cognizable under § 2254. I therefore recommend that the Court DENY his petition for a writ of habeas corpus.

## Conclusion

For the reasons set forth above, I recommend that Laws' petition for writ of habeas corpus (Doc. 1) be DENIED as untimely, and because his claims are not cognizable under 28 U.S.C. § 2254. Respondent's motions to dismiss (Doc. 6 and 11) should be GRANTED, and this case DISMISSED.

Dated at Burlington, in the District of Vermont, this 16th day of May, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).